mony had been taken, and the patent office had decided in favor of the subsequent applicant. The bill further alleges that the patents are in conflict; that the later patent was obtained through fraud, but in what manner is not set forth; and that the defendants have brought suits in Massachusetts for the infringement of their patent. It also alleges the priority in time of the invention covered by the senior patent, and prays that the junior patent may be cancelled, and that, until an adjudication in this suit, the defendants may be enjoined from bringing suits for the infringement of the junior patent. An application is now made for such injunction.

It ought, probably, to be a sufficient reason for denying this application, that the defendants' patent was granted after a full hearing before the patent office, on testimony taken in an interference declared between the application for such patent and the plaintiffs' patent. But, in addition to this, I have examined such testimony, and it shows plainly that the defendants' patent was properly granted, and that, as between it and the plaintiffs' patent, the latter cannot prevail.

Independently of the foregoing considerations, I am not aware of any principle which would authorize the court, in a suit of this character, to restrain a defendant from bringing suits on his patent, before that patent is adjudged to be invalid. The granting of the patent to the defendants confers the right to bring suits thereon for its infringement. Especially is this so as between the parties to this suit, in view of the interference and its result. There is no evidence to sustain the charge of fraud, even if the plaintiffs could be heard to make it. The application for an injunction is denied.

---

ASBESTOS FELTING CO., (UNITED STATES & F. S. FELTING CO v.) See Case No. 16,787.

ASBURY, (YORK BANK v.) See Case No. 18,142.

---

## Case No. 571.

### In re ASH.

[17 N. B. R. 19.]

District Court, S. D. New York. Jan. 7, 1878.

BANKRUPTCY—COMPOSITION—EXAMINATION OF BANKRUPT.

[A bankrupt may be compelled to present himself and produce his books before the register for examination on the question whether a composition entered into in his case is for the best interest of all concerned.]

In bankruptcy.

Chamberlain, Carter & Eaton, for opposing creditor.

Richard S. Newcombe, for alleged bankrupt.

I, James F. Dwight, one of the registers of the said court in bankruptcy, do hereby certify, that in the course of proceedings in said cause before me, and at the second meeting in composition held before me on the 3d day of January, 1878, pursuant to an order of this court dated the 24th day of December, 1877, the following questions arose pertinent to the said proceedings, and were stated and agreed by the counsel for the opposing parties, to wit: Mr. Richard S. Newcombe, who appeared for the alleged bankrupt, and Messrs. Chamberlain, Carter & Eaton, who appeared for Strauss, Kupfer & Co., one of the creditors of said alleged bankrupt, opposing the composition.

Mr. Eaton of counsel for said creditor made the following motion: First.—That he may be allowed to examine the alleged bankrupt touching the question of "best interest of the creditors." Second.—That the register direct the alleged bankrupt to produce his books and papers to be used upon such examination; and Third.—That he be allowed to examine the said alleged bankrupt and the said books at once. Mr. Eaton, in support of said motion, said that he expected to show that the proposed composition was not for the best interest of the creditors, by showing, first, that the alleged bankrupt had cancelled assets which did not appear in his statement; and, second, that several of the claims upon which proofs of debt have been made and which have been counted in favor of the composition are fictitious; and third, that if such claims are fictitious the resolution in said composition had not been properly adopted and confirmed. Mr. Eaton stated that one of his clients, to wit, Mr. Kupfer, a member of the firm of Strauss, Kupfer & Co., the opposing creditors, was present and would make affidavit to these charges if desired.

Mr. Newcombe, the attorney for [Michael Ash] the alleged bankrupt, opposed such motion upon the following grounds: First, that the time for such examination by the creditors had elapsed; second, that such examination can only be had at or during the first meeting; third, that this is the second meeting in composition, and is held for the limited purpose stated in the order of reference, and that such purpose does not require or demand the examination of the alleged bankrupt by a creditor. That no excuse is offered by the opposing creditors for not moving for the examination of the alleged bankrupt at the first meeting of creditors. The alleged bankrupt was present in person at a portion of the second meeting, but did not answer when called for examination, and Strauss, Kupfer & Co., the opposing creditors, were not present at the beginning of the first meeting, but their claim was proved during the first meeting.

I decided that Mr. Eaton had made out a prima facie case for such examination, and granted the motion, holding that the opposing creditor should be allowed to examine the alleged bankrupt touching the question of best interest of the creditors, and that the al-

leged bankrupt should attend and should pro-duce his books and papers for the purpose of such examination. To this ruling the attorney for the alleged bankrupt excepted, on grounds identical with those given in connection with his opposition to the motion, and requested that my ruling should be certified to the judge for his opinion thereon. Mr. Eaton desired me to certify that he wishes to be heard by the court upon the exception thus taken; Mr. Newcombe expressed no desire to be heard unless Mr. Eaton's request to be heard is granted. James F. Dwight, Register in Bankruptcy.

In my opinion, inasmuch as I am directed by the order of reference to inquire, and upon hearing to report the results of my inquiries whether it is for the best interests of all concerned that the composition should be confirmed, etc., it is my duty to take all the information I can upon the subject, and if a contesting creditor desires to examine the debtor and his books, to develop facts showing that it would not be for the best interests of all concerned, the debtor must present himself for such examination.
James F. Dwight, Register.

BLATCHFORD, District Judge. I concur in the ruling of the register.

## Case No. 572.
### ASH v. HAYMAN.
[2 Cranch, C. C. 452.][1]
Circuit Court, District of Columbia. April Term, 1824.

LIMITATION OF ACTIONS—ACKNOWLEDGMENT—OFFER TO COMPROMISE.

Terms offered by way of compromise cannot be given in evidence to rebut the statute of limitations.

[See Rhodes v. Hadfield, Case No. 11,748; Hamilton v. Carnes, Id. 5,977; Nicholls v. Warfield, Id. 10,234; Bank of Columbia v. Sweeney, Id. 882.]

At law.

Assumpsit, upon the defendant's promissory note due in 1806. The defendant pleaded the statute of limitations. To take the case out of the statute, the plaintiff offered in evidence a letter from the defendant to the witness in which he says, "I am desirous that Mr. Ash's claim should be settled;" and offers to pay $150, which was half of the amount of the note without interest. This evidence was objected to by Mr. Marbury, for the defendant, on the ground that it was a mere offer to compromise; and he relied upon the case of Neil v. Abbott, in this court, at December term, 1819, [Case No. 10,088.]

The COURT (THRUSTON, Circuit Judge, contra) rejected the evidence.

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 573.
### ASH v. WILLIAMS.
[5 Cranch, C. C. 674.][1]
Circuit Court, District of Columbia. March Term, 1840.[2]

SLAVERY—CONDITIONAL BEQUEST OF SLAVES—FREEDOM.

In the will of Maria T. Greenfield is the following clause: "I also give and bequeath to my nephew, Gerard T. Greenfield, all my negro slaves, namely Ben, Mansa, James, &c., (naming seventeen slaves,) provided he shall not carry them out of the state of Maryland, or sell them to any one; in either of which events I will and desire the said negroes to be free for life." The legatee sold one of them (the petitioner) to the defendant. Held, that the petitioner thereby became entitled to his freedom.

[See note at end of case.]

The petitioner claimed his freedom under the clause of the will recited in the margin. Upon the death of the testatrix, the legatee, who was also executor, took possession of the petitioner and the other slaves bequeathed to him by the will and held them until he sold the petitioner to the defendant.

Mr. Bradley, for the petitioner, contended that it was a bequest of freedom to the slaves, upon the occurrence of the event of removal or sale. This is a limitation over, in the event of the sale or removal of the negroes by the legatee. Although they are personal property, yet they are also recognized as persons, and are so called in the constitution of the United States; and are capable of receiving a bequest of freedom; even an implied bequest. Dolly Mullin's Case, [Hall v. Mullin,] 5 Har. & J. 190; Wheeler, Slavery, 183, 252; Fitzhugh v. Foote, 3 Call, 13; Le Grand v. Darnell, 2 Pet. [27 U. S.] 664; Wallingsford v. Allen, 10 Pet. [35 U. S.] 583; Menard v. Aspasia, 5 Pet. [30 U. S.] 505; Lee v. Lee, 8 Pet. [33 U. S.] 44; Boyce v. Anderson, 2 Pet. [27 U. S.] 154, 155; McCutchen v. Marshall, 8 Pet. [33 U. S.] 220. This is a question of intention. The testatrix had a right to dispose of her property absolutely, or sub modo. She had a right to bequeath freedom, conditionally, or in a certain event; and when the event occurs, the right to freedom becomes absolute. Dommett v. Bedford, 6 Term R. 684; Gill v. Pearson, 6 East, 173; Pow. Dev. 265; Smith v. Bell, 6 Pet. [31 U. S.] 74; Gulliver v. Poyntz, 3 Wils. 141; Bradley v. Peixoto, 3 Ves. 324; Brandon v. Robinson, 18 Ves. 429; [Yarnold v. Moorhouse,] 1 Russ. & M. 364; Hall v. Smith, 14 Ves. 429.

Mr. Marbury and Mr. Jones, contra, contended that the prohibition to sell or remove the slaves is repugnant to the bequest and therefore void; and that the be-

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Affirmed by supreme court in Williams v. Ash, 1 How. (42 U. S.) 1.]